# United States District Court
# District of South Carolina

| | |
|---|---|
| Rufus Lee Pearson, # 298692; ) | C/A No. 3:05-1180-JFA-JRM |
| ) | |
| Plaintiff; ) | |
| ) | **Report and Recommendation** |
| vs. ) | |
| ) | **for Summary Dismissal** |
| Ann Shawkat; Mr. Boseman; Tina Syphartt; Mr. Golden; ) | |
| Mrs. Hodges; Robert P. Bollinger; Mrs. Connie Miller; Mr. ) | |
| McCall; Mr. Bailey; and Ms. Counts; ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, Rufus Pearson (hereafter, "the Plaintiff"), is a state prisoner proceeding *pro se*. He seeks relief pursuant to Title 42 United States Code §1983. Under the provisions of 28 U.S.C. §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. §1983 and submit findings and recommendations to the District Court.

## BACKGROUND

The Plaintiff alleges that on February 17, 2005, while incarcerated at the Lower Savannah Pre-Release Center (the Center), he was charged with refusing or failing to obey an order. He was offered an administrative resolution of the matter by accepting certain sanctions. The Plaintiff states that he refused the resolution and demanded to be charged for purposes of a disciplinary proceeding. The Plaintiff attaches copies of grievances filed at the Center and also at Trenton Correctional Institution (TCI), which are discussed below in more detail. It appears from the South Carolina Department of Corrections (SCDC) response to Grievance Number LS-008-05 that the Plaintiff was charged a second time with the same offense on February 18,

Dockets.Justia.com

2005.  Thereafter, on February 22, 2005, He was transferred from the Center to the TCI Special Management Unit (SMU) to await disciplinary proceeding(s).

The Plaintiff states that he was exonerated with regard to the infraction(s) at a disciplinary hearing on March 11, 2005.  He claims, however, that classification committees at the Center, TCI and SCDC have continued to apply a different custody classification to him and to deny him access to work release because of his "poor adjustment" at the Center.  Basically, the Plaintiff asks that this Court reverse the "poor adjustment" finding and restore his custody classification and access to work release.

## *PRO SE* **COMPLAINT**

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5 (1980); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F. 2d 1147 (4th 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, supra.  Even under this less stringent standard, however, a *pro se* complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

The Complaint fills nearly a dozen pages of hand written text which is redundant and difficult to read.  Rule 8(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) provides the

following guidance with respect to complaints (and other affirmative claims):

> Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

The Plaintiff should be aware that persistent failure to comply with Fed. R. Civ. P. 8(a) can result in dismissal with prejudice, especially when a district court provides the offending party with warning. See Michaelis v. Nebraska State Bar Association, 717 F. 2d 437 (8th Cir. 1983). In Brown v. Califano, 75 F.R. D. 497 (D.D.C. 1977), the Honorable John Sirica, United States District Judge for the District of Columbia, offered the following assessment of a complaint in dismissing an action with prejudice:

> The pleading filed by the plaintiff in this case is indeed a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies. The complaint contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments. Nor has the plaintiff alleged with even modest particularity the dates and places of the transactions of which he complains. It belabors the obvious to conclude that the complaint filed in this action falls far short of the admittedly liberal standard set in F.R. Civ. P. 8(a).

An example of the Plaintiff's prolix and redundant writing is the following passage which states his essential claim – a retaliatory re-classification and denial of work release based upon a false finding of "poor adjustment" at the Center:

> I never had poor adjustment when I was at Lower Savannah Pre-Release Center. When I worked for the City of Aiken. Lower Savannah Classification Committee Mr. Golden, Mr. Baily, Mrs. Ann Shawkat, Mr. McCall, Mrs. Hodges put all this false information in the CRT. When I had refused to accept Administrative Resolution for a charge that I didn't do. It's against the law for Lower Savannah Pre-Release Center, Trenton Classification Committee and State Classification to falsify a record of document. Made with intent to defraud or defraud b y changing meaning. Any alteration is a felony offense and must be voided. Lower Savannah Classification Committee and State Classification have

> Alteration-Variation; changing; making different. A change of a thing from one form or state to another; making a thing different from what it was without destroying its identity. It introduces some change into instruments, terms, meaning, language or details. Is said to be material when it affects or may possibly affect, the rights of the persons interested in the document. Lower Savannah Classification committee. Change in one or more respects, but without destruction of existence or identity of the thing changed to increase or diminish. To vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affect to change partially. To make false by mutilation.
>
> Lower Savannah Classification Committee mutilated State Classification. By putting false information into the CRT. After I was found not guilty of the charge. This have directly have [sic] affected me. Lower Savannah Classification Committee, Trenton Classification, and State Classification have erroneously taken my MO/A custody Status. The Department has taken my created liberty interest as punishment without a major disciplinary hearing. IN this case, I lost my MO/A custody status after I was not convicted of prison disciplinary infractions. As such I find that this tribunal has jurisdiction to hear my case. However, the Department of State Classification, Lower Savannah Classification, Trenton Classification Committee failed to set forth adequate findings of facts and conclusions of law with respect why they have a conviction in the CRT poor adjustment, I was given no reason why I was convicted of poor adjustment. I was treated different from two other inmates who were ship from Lower Savannah who was found not guilty.

[1-1, pp. 6-8.]

The Complaint continues in the same vein. The claim that two other inmates were found not guilty in a disciplinary proceeding, as was the Plaintiff, fails to establish that the three prisoners were similarly situated as a matter of law. The assessment of "poor adjustment" by prison administrators is not a "conviction" or disciplinary finding in itself. Nevertheless, even if true, the Plaintiff's allegations fail to state a claim upon which this Court may grant relief.

### NO CONSTITUTIONAL ISSUE PRESENTED

The Plaintiff cannot challenge his custody re-classification or access to employment in this Court. It is well settled that prisoners, federal or state, who are lawfully incarcerated have no constitutionally protected interest in their custody classifications or places of confinement. Moody v. Daggett, 429 U.S. 78 (1976); Meachum v. Fano, 427 U.S. 215 (1976); see also

Cochran v. Morris, 73 F. 3d 1310 (4th Cir. 1996); Slezak v. Evatt, 21 F. 3d 590 (4th Cir. 1994); Gorham v. Hutto, 667 F. 2d 1146 (4th Cir. 1981); Cooper v. Riddle, 540 F. 2d 731 (4th Cir. 1976).

The Sixth Circuit, reasoning from the Supreme Court holding in Hewitt v. Helms, 459 U.S. 460 (1983) and other case law, has directly held that prison inmates have no constitutionally protected property interest in prison employment. Newsom v. Norris, 888 F. 2d 371 (6th Cir. 1989); see also Altizer v. Paderick, 569 F. 2d 812 (4th Cir. 1978).

Likewise, the Plaintiff cannot challenge the administrative finding of "poor adjustment" in this Court. Federal courts are cautious to afford appropriate deference and flexibility to state prison officials managing the volatile prison environment. Sandin v. Conner, 515 U.S. 472 (1995). Hiss repeated invocation of South Carolina Department of Corrections (SCDC) policies and procedures recalls an approach to the judicial review of prison conditions which the United States Supreme Court decisively rejected in Sandin. The Court observed that its Hewitt decision had created a mistaken impression in lower courts that the form of regulations should be controlling, with less concern about actual liberty or other protected constitutional interests:

> By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges.

515 U.S. at 481. Sandin, however, redirected judicial review to prison conditions (and precipitating administrative practices) which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. Since none of the Plaintiff's essential complaints in this case – the custody re-classification, the denial of employment or "poor adjustment" finding – raise constitutional issues, his allegations of specific policy or procedural missteps have no legal significance.

5

In the final analysis, even if the Plaintiff's claims presented justiciable issues in this Court, his attached documentation reveals that he has failed to exhaust administrative remedies. The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) provides: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held this to be a mandatory provision which "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).

SCDC has a well-established inmate grievance procedure. An attempt at informal resolution through the Institutional Grievance Coordinator is required. If the matter cannot be so resolved, then the inmate files a Step One Grievance (SCDC Form 10-5) which is reviewed by the administration of a given correctional institution. The Step Two Grievance (SCDC Form 10-5A) is the means whereby an adverse institutional decision may be reviewed within SCDC above the level of the institution warden.[1] SCDC deadlines for review of Step One grievances and Step Two appeals are forty (40) and sixty (60) days respectively.[2]

---

[1] – In orders filed on May 9, 1996, this court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the requirements of 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996)

[2] – The current SCDC Policy/Procedure GA-01.12 "Inmate Grievance System" allows forty (40) calendar days for a Warden to respond to Step One and sixty (60) calendar days thereafter for a determination upon a Step Two appeal. *See* paragraphs 14.3 and 14.4. Moreover, the directive provides that "in all instances, grievances will be processed from initiation to final disposition within 105 days except when the Chief/Designee, Inmate Grievance Branch, specifically agrees to a request for an extension." *See* paragraph 11. The maximum extension period is limited to seventy-five days, with the specific provision that no grievance process may exceed one hundred eighty days.

The Plaintiff's attachments include documentation from five (5) grievance proceedings: (1) LS-008-05, commenced on March 9, 2005, complaining that he was denied work release after the disciplinary charges at the Center, to which the Center Warden, and SCDC on Step Two appeal, responded that actions taken in February, 2005, by the Center administration were appropriate given that he committed two separate offenses within two days; (2) LS-010-05, commenced with Step One on April 4, 2005, challenging the "poor adjustment" finding at the Center, to which the Warden responded on April 11, 2005, and from which Plaintiff evidently has not appealed; (3) TCI-0138-05, commenced on March 2, 2005, challenging his re-classification, to which the TCI Warden responded on April 11, 2005, and from which Plaintiff evidently has not appealed; (4) TCI-209-05 and TCI-211-05 were both commenced on April 4, 2005, and were deemed duplicative of TCI-0138-05.

As noted above, the due process requirements for prison transfers and for administrative segregation are minimal. See Hewitt v. Helms, supra. The denial of the Plaintiff's first grievance (LS-0080-05) and affirmance by SCDC of the Center's actions after two infractions within two days fails to state a constitutional claim. The actions were taken while disciplinary proceedings were pending.

The latter grievances – challenging the continuing custody re-classification and denial of access to work release – were all commenced barely two weeks before the Plaintiff initiated this action. The Step One grievances were all answered by correctional institution administrations well within the deadlines established by the SCDC Inmate Grievance system. Rather than proceed through Step Two, the Plaintiff simply brought action in this Court. The conclusion is inescapable that the Plaintiff is not seriously committed to exhaustion of administrative

proceedings. Even if the Complaint state claims upon which relief could be grant, this action would still be dismissed as premature.

Under 28 U.S.C. § 1915 a District Court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." § 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25 (1992). Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under §1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, supra. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

## RECOMMENDATION

The Defendants should not be required to answer this frivolous action. It is therefore recommended that the within Complaint be dismissed without prejudice but that this dismissal be deemed a "strike" under the "three strikes" rule of 28 U.S.C. 1915(g). The Plaintiff's attention is directed to the Notice on the following page.

Respectfully Submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

April 22, 2005
Columbia, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

      The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

      During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

      **This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201**
